## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| BRANDEE BUSCHMANN, and | ) |
| | ) |
| | ) |
| WILLIAM MORRISON, | )    Cause No.: 4:21-cv-00340 |
| | ) |
| Plaintiffs, | ) |
| | )    **Jury Trial Demanded** |
| v. | ) |
| | ) |
| OFFICER JOHN BECK, in his individual | ) |
| capacity, | ) |
| | ) |
| and | ) |
| | ) |
| OFFICER LAGUD, in his individual capacity, | ) |
| | ) |
| and | ) |
| | ) |
| KANSAS CITY, MISSOURI POLICE | ) |
| DEPARTMENT, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Brandee Buschmann and William Morrison, by and through

undersigned counsel, and, for their Complaint for Damages against Defendants Officer John

Beck, Officer Lagud, and the Kansas City, Missouri Police Department, states as follows:

## INTRODUCTION

1.     This is a civil rights action brought under 42 U.S.C. § 1983 against Defendants

Officer John Beck, Officer [First Name Unknown] Lagud, and the Kansas City, Missouri Police

Department ("KCPD") for violations of Plaintiffs Brandee Buschmann and William Morrison's

Fourth and Fourteenth Amendment rights, as secured under the Constitution of the United States of America, cognizable pursuant to 42 U.S.C. § 1983.

2.     On July 30, 2016, Defendants Officer John Beck and Officer (First Name Unknown) Lagud, of the Kansas City, Missouri Police Department ("KCPD"), entered onto the residential property of Plaintiffs Brandee Buschmann and William Morrison.  Despite having full knowledge that Plaintiffs Buschmann and Morrison had a family dog, Sierra, on the property, Defendants Beck and Lagud failed to plan for, nor even discuss the possibility of, the use of any type of non-lethal force in the event that they encountered Sierra.  Instead, Defendants Beck and Lagud simply drew their firearms, thereby indicating their clear intention to shoot and kill any dog that they might encounter.  Upon encountering Sierra, Defendant Beck fired two shots at Sierra, missing with the first and striking with the second.  Unbeknownst to Defendants, their actions were captured by Plaintiffs' home surveillance system, which clearly shows that Defendant Beck fired his second and fatal shot while Sierra was running away from him and Defendant Lagud and in desperate retreat back to her home and owner.  As such, at the time when Defendant Beck shot Sierra, she posed no threat to either Defendants Beck or Lagud, and Defendant Beck simply executed a defenseless and fleeing animal.  Additionally, the home surveillance video also reveals discrepancies between Defendant Beck's account, as provided in his incident report, and the events as they actually occurred.  Despite Defendant Beck's written statement that no citizens were present at the time he fired his shots, Plaintiff Buschmann was clearly within his line of sight and fire and was, in fact, injured when she was struck by the ricochet of one of his bullets.  Then, following the shooting of Sierra, Defendants Beck and Lagud simply left the scene as Ms. Buschmann and Mr. Morrison  grieved over Sierra's body.  In the days that followed, the Kansas City, Missouri Police Department failed to conduct any

investigation into this shooting. No statements were taken from any witnesses nor were any investigators sent to take photographs, measurements, or examine Sierra's body. In fact, Defendant Beck's shell casings were left untouched in Plaintiffs' yard for months in hopes that somebody from the Kansas City Police Department would come to investigate. Hence, by failing to conduct any investigation into this incident, which would have revealed the unreasonableness of Defendant Beck's shooting of Sierra and the discrepancies between Defendant Beck's official written account and Plaintiffs' home surveillance video, Defendant KCPD simply "rubber-stamped" Defendant Beck's actions as justified and thereby ratified and encouraged this type of unlawful behavior by Defendant Beck and the entire Kansas City, Missouri police force. Finally, despite several other officer-involved-shootings of family pets and knowledge of the need for policies and training on safely and lawfully interacting with family pets, KCPD has failed to do so and thereby further ratified and encouraged this type of unlawful behavior.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper to this Court, pursuant to 28 U.S.C. §§1331 and 1343, and as this Court has personal jurisdiction over Defendants.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants are located, and the events giving rise to Plaintiffs' claims occurred, within the boundaries of this judicial district.

## PARTIES

5.      Plaintiff Brandee Buschmann (herein "Ms. Buschmann") is a citizen of the United States of America and resident of the State of Missouri.

6.      Plaintiff William Morrison (herein "Mr. Morrison") is a citizen of the United States of America and resident of the State of Missouri.

7.      Defendant John Beck (herein "Defendant Beck") is, and was at all times relevant hereto, a lawfully sworn and Missouri certified police officer, in the employ of Defendant Kansas City, Missouri Police Department, and acting under color of state law.  Defendant Beck is named in this litigation in his individual capacity.

8.      Defendant [First Name Unknown] Lagud (herein "Defendant Lagud") is, and was at all times relevant hereto, a lawfully sworn and Missouri certified police officer, in the employ of Defendant Kansas City, Missouri Police Department, and acting under color of state law. Defendant Lagud is named in this litigation in his individual capacity.

9.      Defendant Kansas City, Missouri Police Department ("KCPD") is a body politic, organized and existing pursuant to Missouri state law.

## FACTUAL ALLEGATIONS

10.     At all times relevant hereto, Plaintiffs Brandee Buschmann and William Morrison lived in a single-family residence, located within the boundaries of Kansas City, Missouri, and patrol jurisdiction of Defendant KCPD.

11.     At all times relevant hereto, Ms. Buschmann and Mr. Morrison were the lawful owners of Sierra, an approximately fourteen (14) year-old, female, mixed breed, rescue dog.

12.     On July 30, 2016, Defendants Beck and Lagud were dispatched to Ms. Buschmann and Mr. Morrison's neighborhood and the residence of Brandon Daniels, their neighbor.

13.     The basis of this dispatch was a report of a disturbance made by Mr. Daniels and his claims to have heard screaming and/or yelling coming from the vicinity of Ms. Buschmann and Mr. Morrison's property.

14. Mr. Daniels informed Defendants Beck and Lagud that Ms. Buschmann and Mr. Morrison had a dog – Sierra – on the property; that Ms. Buschmann and Mr. Morrison were "nice people;" and Sierra was "not a dog that would attack you."

15. In approaching Ms. Buschmann and Mr. Morrison's residence, Defendants Beck and Lagud knew and/or should have known that there was a dog on the property.

16. In the approximately three (3) to five (5) minutes that it took Defendants Beck and Lagud to reach Plaintiffs' residence, the Defendants failed to engage in any planning or discussion regarding the use of any non-lethal strategies for safely interacting with any dog they might encounter on Ms. Buschmann and Mr. Morrison's property.

17. On information and belief, Defendants Beck and Lagud were equipped with non-lethal weapons and tools, such as mace, tasers, flashlights, and batons.

18. In approaching Ms. Buschmann and Mr. Morrison's home, Defendants Beck and Lagud both unholstered their firearms and had their firearms at the ready and pointed downward and at the level at which one would expect to see a dog.

19. In approaching Ms. Buschmann and Mr. Morrison's front door, neither Defendant Beck nor Defendant Lagud had prepared to utilize any manner of non-lethal force in the event that Sierra were to appear.

20. In approaching Ms. Buschmann and Mr. Morrison's front door, Defendants Beck and Lagud observed that the front door was "cracked open."

21. Despite having knowledge of a dog on the property, neither Defendant Beck nor Defendant Lagud engaged in any efforts to secure the door and thereby preventing Sierra, from possibly escaping the home.

22.     After knocking on the front door, Defendants Beck and Lagud heard Sierra barking and coming to the door.

23.     Despite knowing that Sierra was approaching the front door, neither Defendant Beck nor Defendant Lagud made any effort to secure the door to prevent her from emerging.

24.     Defendants Beck and Lagud had sufficient time and opportunity to secure the door before Sierra reached it.

25.     Instead of considering and/or preparing any form of non-lethal force for interacting with Sierra, Defendants Beck and Lagud backed away from the door.

26.      After backing away from the door, Defendant Beck took deliberate aim with his firearms at the location and height at which Sierra would be emerging.

27.     The only actions that Defendants Beck and Lagud took in preparation for a potential encounter with Sierra was for Defendant Beck to raise and aim his firearm and prepare to shoot.

28.     Defendant Lagud was the officer closest to Sierra after she emerged through the door.

29.     Despite being the closest officer to Sierra, Defendant Lagud evaded Sierra rather than fire his weapon, indicating that he did not perceive a threat warranting the use of deadly force.

30.     Defendant Beck fired a first shot at Sierra but missed her.

31.     Defendant Beck's first shot frightened Sierra, caused her to turn away from Defendants Beck and Lagud, and begin to run back towards the house.

32.     After Defendant Beck's first shot, Sierra was in clear retreat and posed no immediate threat to either Defendant Beck or Lagud.

33.     While Sierra was running away from him, Defendant Beck took deliberate aim at the fleeing Sierra and fired a second shot, striking her from behind.

34. Sierra did not die immediately from Defendant Beck's shot but instead lay writhing on the ground and whimpering for period of time prior to dying.

35. Ms. Buschmann was at Sierra's side as she lay writhing and whimpering as she died.

36. Defendant Beck's second shot was objectively unreasonable in that Sierra posed no threat to either Defendant as she was in full retreat and away from Defendants and back toward her house and owner.

37. The incidents of July 30, 2016 as described herein were recorded by Ms. Buschmann and Mr. Morrison's home surveillance cameras.

38. The home surveillance footage clearly shows that Defendant Beck fired his second and fatal shot while Sierra was in full retreat away from Defendants Beck and Lagud.

39. In his written incident report of July 31, 2016 (entitled "Discharge of Firearm"), Defendant Beck indicates that no civilians were present when he fired his shots.

40. In his written incident report, Defendant Beck states it was only after he fired his shots that "Brandee Bushman [*sic.*] and William Morrison then came running out the door."

41. At the time Defendant Beck fired his first shot, Ms. Buschmann was in Defendant Beck's line of sight and fire and at and partially emerged from her front door.

42. At the time Defendant Beck fired his second shot, Ms. Buschmann was in Defendant Beck's line of sight and fire and had almost fully, if not fully, emerged through her front door.

43. Despite Defendant Beck's written report that Ms. Buschmann and Mr. Morrison emerged from the house together after the shooting, Ms. Buschmann and Mr. Morrison's home surveillance video clearly shows Ms. Buschmann emerging first and alone.

44.     After exiting her home, Ms. Buschmann first ran to Sierra and then back to the doorway to call inside.

45.     In response to Ms. Buschmann's cries to him, Mr. Morrison emerged through the front door several moments after Ms. Buschmann.

46.     Following this incident, Ms. Buschmann developed a large and painful injury in the form of a red welt on her abdomen.

47.     On information and belief, Ms. Buschmann's injury was caused by a ricochet from one of Defendant Beck's shots.

48.     In preparing his written incident report, Defendant Beck knew and/or should have known that his statements regarding no citizens being present and the timing in which Ms. Buschmann and Mr. Morrison emerged from the home were false, inaccurate, and/or misleading.

49.     After shooting Sierra, Defendants Beck and Lagud quickly left without conducting any legitimate investigation into Mr. Daniel's initial report.

50.     On information and belief, Defendants Beck and/or Lagud decided that no crime had occurred at Ms. Buschmann and Mr. Morrison's residence and the noises reported by Mr. Daniels likely came from a nearby walking trail.

51.     On August 2, 2016, Defendant Beck's killing of Sierra was reported by several Kansas City media outlets, one of which included the airing of Plaintiffs' home surveillance video.

52.     In at least one instance, a Defendant KCPD spokesperson gave on-air commentary in a story which also included an airing of Plaintiffs' home surveillance video.

53.     On information and belief, Defendant KCPD and Defendant Beck's supervisors knew and/or should have known of the existence of Plaintiffs' home surveillance video of the incident on or about August 2, 2016.

54.     In light of Plaintiffs' home surveillance video, Defendant KCPD, Defendant Beck's supervisors, and any KCPD officer assigned to conduct a review of this incident knew and/or should have known of the discrepancies contained in Defendant Beck's incident report of July 31, 2016 and Plaintiffs' home surveillance video.

55.     Defendant KCPD did not, at any time, make any attempts to contact Ms. Buschmann and/or Mr. Morrison following this incident to obtain witness statements or a copy of their home surveillance video.

56.     Defendant KCPD did not, at any time, send any investigative officer to Ms. Buschmann and Mr. Morrison's residence to take pictures or measurements of the scene.

57.     Despite the fact that Sierra was killed as the result of an officer involved shooting, Defendant Beck, Defendant Lagud, and/or no other member of KCPD made any efforts to secure and/or examine Sierra's body for purposes of evidence collection and/or conducting any internal review of Defendant Beck's actions.

58.     Ms. Buschmann and Mr. Morrison left Defendant Beck's shell casings undisturbed in their yard for months following this incident, so as not to impede any possible internal investigation into Sierra's death.

59.     On information and belief, Defendant Lagud did not prepare and/or was not asked to prepare any written witness statement at the time of this incident.

60.     On information and belief, the only information reviewed by Defendant KCPD into this matter was Defendant Beck's written incident report of July 31, 2016.

61.     On information and belief, it was the policy, practice, and/or custom of Defendant KCPD to not conduct use of force reviews and/or investigations of incidents when its officers discharged their firearms and/or shot dogs and/or other animals.

62.     By failing to conduct any reasonable or even minimal investigation of Defendant Beck's discharge of his firearm and killing of Sierra and his false, inaccurate, and/or misleading statements in his incident report of July 31, 2016, Defendant KCPD has ratified and encouraged Defendant Beck's unlawful behavior and given its approval to similar unlawful behavior in the future, both by Defendant Beck and its other officers.

63.     By finding Defendant Beck's killing of Sierra to be justified without conducting any reasonable or minimal investigation, particularly in light of his false, inaccurate, and/or misleading statements in his incident report of July 31, 2016, Defendant KCPD has ratified, and continues to ratify, a pattern and practice of unconstitutional behavior by Defendant Beck and its officers.

64.     On information and belief, prior to and continuing after Sierra's death, Defendant KCPD's officers regularly and routinely encounter dogs and family pets in the course of their law enforcement duties.

65.     On information and belief, since at least 2013, officers of Defendant KCPD have been involved in multiple incidents during which officers shot and/or killed family pets and dogs.

66.     In light of these incidents involving officer shooting and killing family pets and dogs, coupled with Defendant KCPD's knowledge that its officers regularly encounter family pets and dogs, Defendant KCPD knew and/or should have known of the need to promulgate and enforce effective policies and to properly train its officers regarding pet and canine encounters in the interest of protecting the rights of the public.

67.     On information and belief, Defendant KCPD does not currently adequately or reasonably maintain appropriate policies or properly train its officers on pet and canine encounters and use of force related thereto.

# LEGAL CLAIMS

## COUNT I

### *UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, COGNIZABLE UNDER 42 U.S.C. § 1983*

### Against Defendant John Beck

68.    Plaintiffs hereby re-allege and incorporate the preceding paragraphs by reference and as if set forth fully herein.

69.    At all times relevant hereto, Defendant Beck was acting under color of state law.

70.    As repeatedly recognized by the federal courts, the seizure of a family pet and dog by killing him/her can give to a claim for an unlawful seizure in violation of the Fourth Amendment. See Zorich v. St. Louis County, *Doc. # 114*, *Order,* p. 33 (E.D. Mo. Dec. 18, 2018)("The Eighth Circuit has held that '[a] dog is considered property for Fourth Amendment purposes.")(citing Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); San Jose Charter of the Hell's Angels v. City of San Jose, California, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")(holding that "the killing of a person's dog constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest")(citations omitted).

71.    On or about July 31, 2016, Defendant Beck unlawfully seized Sierra – Plaintiffs' companion animal – by shooting and killing her.

72.    Defendant Beck acted unreasonably in the shooting and killing of Sierra in that he shot her as she was fleeing and thus posed no danger to himself or anyone else.

73. As a direct and proximate result of the conduct of Defendant Beck, Plaintiffs have suffered injuries and damages, including not limited to: infringements and deprivations of their constitutional rights; loss of Sierra and her companionship; great fear for their safety and that of their family and dog; pain of the mind as well as the body; and fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

74. The acts of Defendant Beck were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiffs, thus entitling them to an award of punitive damages against Defendant Beck.

75. As a result of Defendant Beck's unlawful actions and infringements of their protected rights, Plaintiffs have been compelled to retain counsel in this matter and are therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs Brandee Buschmann and William Morrison respectfully pray that this Court enter judgment in their favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Beck in his individual and official capacities and award them any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT II

### *EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, COGNIZABLE UNDER 42 U.S.C. § 1983*

### Against Defendant John Beck

76. Plaintiffs hereby re-allege and incorporate the preceding paragraphs by reference and as if set forth fully herein.

77.     At all times relevant hereto, Defendant Beck was acting under color of state law.

78.     Defendant Beck unreasonably seized Plaintiff Buschmann and used excessive force against her by shooting at Sierra when Plaintiff Buschmann was within such close proximity, within his line of sight and fire, and/or by recklessly shooting at a house he knew and/or should have known to be occupied.

79.     As a result of Defendant Beck's actions, Ms. Buschmann was injured by a ricochet from Defendant Beck's gunshot.

80.     At the time of this shooting, Ms. Buschmann was not suspected of having committed a crime; posed no threat to Defendant Beck; was not actively resisting or attempting to evade arrest;; and the discharge of a firearm towards her in these circumstances was extreme and unnecessary.

81.     As a direct and proximate result of the conduct of Defendant Beck, Plaintiff Buschmann has suffered injuries and damages, including but not limited to: infringements and deprivations of her constitutional rights; great fear for her safety; pain of the mind as well as the body; and fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

82.     The acts of Defendant Beck were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiff, thus entitling them to an award of punitive damages against Defendant Beck.

83.     As a result of Defendant Beck's unlawful actions and infringements of her protected rights, Plaintiff have been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs Brandee Buschmann and William Morrison respectfully pray that this Court enter judgment in their favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Beck in his individual and official capacities and award them any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT III

### *UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, COGNIZABLE UNDER 42 U.S.C. § 1983*

#### Against Defendant John Beck

84.    Plaintiffs hereby re-allege and incorporate the preceding paragraphs by reference and as if set forth fully herein.

85.    At all times relevant hereto, Defendant John Beck was acting under color of state law.

86.    As repeatedly recognized by the federal courts, the seizure of a family pet and dog by killing him/her can give to a claim for an unlawful seizure in violation of the Fourth Amendment. See Zorich v. St. Louis County, *Doc. # 114*, *Order,* p. 33 (E.D. Mo. Dec. 18, 2018)("The Eighth Circuit has held that '[a] dog is considered property for Fourth Amendment purposes.")(citing Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); San Jose Charter of the Hell's Angels v. City of San Jose, California, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")(holding

that "the killing of a person's dog constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest")(citations omitted).

87.    Pursuant to the requirements of the Fourth Amendment, police officers must develop a non-lethal plan and/or consider or prepare to use non-lethal alternatives to interacting with a family pet or dog in instances where they know and/or should know that the family pet or dog is likely to be present on a property.

88.    Defendant Beck, acting alone and/or acting in concert with Defendant Lagud seized Sierra – Plaintiffs' companion animal.

89.    Defendant Beck, acting alone and/or acting in concert with Defendant Lagud, acted unreasonably in the shooting and killing of Sierra in that he failed to even consider, much less prepare to utilize, any non-lethal force in encountering her.

90.    As a direct and proximate result of the conduct of Defendant Beck, Plaintiffs have suffered injuries and damages, including but not limited to: infringements and deprivations of their constitutional rights; loss of Sierra and her companionship; great fear for their safety and that of their family and dog; pain of the mind as well as the body; and fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

91.    The acts of Defendant Beck were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiffs, thus entitling them to an award of punitive damages against Defendant Beck.

92.    As a result of Defendant Beck's unlawful actions and infringements of their protected rights, Plaintiffs have been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs Brandee Buschmann and William Morrison respectfully pray that this Court enter judgment in their favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Lagud in his individual and official capacities and award them any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT IV

### *UNREASONABLE SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, COGNIZABLE UNDER 42 U.S.C. § 1983*

### Against Defendant Lagud

93.     Plaintiffs hereby re-allege and incorporate by reference the factual allegations contained in paragraphs 10 through 89, as if set forth fully herein.

94.     At all times relevant hereto, Defendant Lagud was acting under color of state law.

95.     As repeatedly recognized by the federal courts, the seizure of a family pet and dog by killing him/her can give to a claim for an unlawful seizure in violation of the Fourth Amendment. See Zorich v. St. Louis County, *Doc. # 114*, *Order,* p. 33 (E.D. Mo. Dec. 18, 2018)("The Eighth Circuit has held that '[a] dog is considered property for Fourth Amendment purposes.")(citing Andrews v. City of West Branch, Iowa, 454 F.3d 914, 918 (8th Cir. 2006); San Jose Charter of the Hell's Angels v. City of San Jose, California, 402 F.3d 962, 975 (9th Cir. 2005) ("We have recognized that dogs are more than just a personal effect. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture.")(holding that "the killing of a person's dog constitutes an unconstitutional destruction of property absent a sufficiently compelling public interest")(citations omitted).

96.     Pursuant to the requirements of the Fourth Amendment, police officers must develop a non-lethal plan and/or consider or prepare to use non-lethal alternatives to interacting with a family pet or dog in instances where they know and/or should know that the family pet or dog is likely to be present on a property.

97.     Defendant Lagud, acting in concert with Defendant John Beck seized Sierra – Plaintiffs' companion animal.

98.     Defendant Lagud, acting alone and/or acting in concert with Defendant John Beck, acted unreasonably with respect to the shooting and killing of Sierra in that he failed to even consider, much less prepare to utilize, any non-lethal force in encountering her.

99.     As a direct and proximate result of the conduct of Defendant Lagud, Plaintiffs have suffered injuries and damages, including but not limited to: infringements and deprivations of their constitutional rights; loss of Sierra and her companionship; great fear for their safety and that of their family and dog; pain of the mind as well as the body; and fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

100.    The acts of Defendant Lagud were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Plaintiffs, thus entitling them to an award of punitive damages against Defendant Beck.

101.    As a result of Defendant Lagud's unlawful actions and infringements of their protected rights, Plaintiffs have been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs Brandee Buschmann and William Morrison respectfully pray that this Court enter judgment in their favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Lagud in his individual and official capacities and award them any and all

compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

<u>COUNT V</u>

*FAILURE TO TRAIN, SUPERVISE, AND/OR DISCIPLINE*

**Against Defendant Kansas City, Missouri Police Department**

102.    Plaintiffs hereby re-allege and incorporate the preceding paragraphs by reference and as if set forth fully herein.

103.    At all times relevant hereto, Defendant Beck was acting under color of state law in the performance of his law enforcement duties as an officer of Defendant KCPD.

104.    Defendant Beck, acting alone and in concert with Defendant Lagud, unlawfully killed Sierra and wounded Plaintiff Buschmann.

105.    Defendant Beck's killing of Sierra and wounding of Plaintiff Buschmann deprived Plaintiffs of their protects rights, as secured under the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

106.    Defendants Beck and Lagud, acting alone and acting in concert with each other, unlawfully failed to consider any non-lethal mechanisms and/or failed to develop any non-lethal plan for safely interacting with Sierra, who each knew to be on Plaintiffs' property.

107.    Defendants Beck and Lagud's failures, acting alone and in concert with each other, to consider and/or develop any non-lethal plan for safely interacting with Sierra, who each knew to be on Plaintiffs' property, deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments.

108.    Defendant KCPD knew and/or should have known that its officers, including Defendants Beck and Lagud, would regularly encounter dogs and family pets in the regular course of their law enforcement duties and had a duty and obligation to properly train, supervise, and discipline its officers regarding such encounters.

109.    The training, supervisory, and/or disciplinary policies and practices of Defendant KCPD were inadequate to prevent Defendants Beck and Lagud's violations of the law.

110.    The failure of Defendant KCPD to properly train, supervise, and discipline its officers, including Defendants Beck and Lagud, was the direct and proximate cause of the deprivation of Plaintiffs' constitutional rights by Defendant Beck and is so closely related as to the deprivations of Plaintiffs' rights as to be a moving force behind Plaintiff's injuries.

111.    As a direct and proximate result of the conduct of Defendant KCPD, Plaintiffs have suffered injuries and damages, including but not limited to: infringements and deprivations of their constitutional rights; loss of Sierra and her companionship; great fear for their safety and that of their family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

112.    As a result of Defendant KCPD's unlawful actions and infringements of their protected rights, Plaintiffs have been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs Brandee Buschmann and William Morrison respectfully pray that this Court enter judgment in their favor under 42 U.S.C. §§ 1983 and 1988 against Defendant KCPD and award them any and all compensatory damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT VI

### *FAILURE TO TRAIN, SUPERVISE, AND/OR DISCIPLINE*

### Against Defendant Kansas City, Missouri Police Department

113.     Plaintiffs hereby re-allege and incorporate by reference the factual allegations contained in the preceding paragraphs as if set forth fully herein.

114.     At all times relevant hereto, Defendants Beck and Lagud were acting under color of state law.

115.     Defendant Beck's use of his firearm to kill Sierra and wound Plaintiff Buschmann deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

116.     Defendant KCPD knew and/or should have known that its officers, including Defendants Beck, were armed and had and would discharge their firearms at dogs, family pets, and/or animals in the course of their duties.

117.     By failing to conduct any use of force review and/or investigations into officer discharges of firearms at dogs, family pets, and/or animals, Defendant KCPD failed to properly and adequately supervise and/or discipline its officers and, in effect, ratified such discharges of firearms in all instances involving dogs, family pets, and/or animals.

118.     As described above, the training, supervisory, and/or disciplinary policies and practices of Defendant KCPD were thereby inadequate to prevent Defendants Beck and Lagud's violations of the law.

119.     The failure of Defendant KCPD to properly train, supervise, and discipline its officers, including Defendants Beck and Lagud, was the direct and proximate cause of the

deprivation of Plaintiffs' constitutional rights by Defendant Beck and is so closely related as to the deprivations of Plaintiffs' rights as to be a moving force behind Plaintiff's injuries.

120.    As a direct and proximate result of the conduct of Defendant KCPD, Plaintiffs have suffered injuries and damages, including but not limited to: infringements and deprivations of their constitutional rights; loss of Sierra and her companionship; great fear for their safety and that of their family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

121.    As a result of Defendant KCPD's unlawful actions and infringements of her protected rights, Plaintiffs have been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs Brandee Buschmann and William Morrison respectfully pray that this Court enter judgment in their favor under 42 U.S.C. §§ 1983 and 1988 against Defendant KCPD and award them any and all compensatory damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

Respectfully Submitted,

*/s/ Eric C. Crinnian*
Eric C. Crinnian, MO 66536
107 W. 9th St., 2nd Floor
Kansas City, MO 64105
Tel: (816) 459-0649
eric@crinnian.law